UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

NO. 1:07-cv-8

KENTUCKY FARM BUREAU MUTUAL
INSURANCE COMPANY                                                               PLAINTIFF

V.

DEERE & COMPANY and
HARTLAND EQUIPMENT CORP.                                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Deere & Company's Motion for Summary Judgment. Oral argument on the matter was heard, and the matter is ripe for decision. For the reasons provided herein, the Motion for Summary Judgment is DENIED [DN 22].

**I. Facts**

In late 2004, Beau Tabor purchased a new tractor manufactured by Deere & Company (Deere) and sold by Hartland Equipment Corp. (Hartland) in Bowling Green. The tractor was covered by a warranty good for two years or 2,000 hours of use, whichever came first. Soon after the purchase, Tabor began having problems with his tractor. The tractor would repeatedly and unexpectedly slip out of gear, invariably involving the tractor blowing fuses. In 2005, the tractor was returned to Hartland multiple times for maintenance and repair, but the problems with the tractor were never fully corrected. The maintenance record at Hartland reflect myriad attempts to correct the problem, including multiple wiring fixes and new gear

levers. The maintenance record indicates that Deere ultimately concluded the problem with the tractor was a software issue. The software problem was unable to be immediately corrected, however, because a software patch was not yet available. Tabor continued to use his tractor, replacing fuses as necessary to keep the tractor running. Tabor stated that the fuses were given to him by Hartland, and he was instructed to use them as needed.

On November 7, 2005, while Tabor was using the tractor to roll hay, he had to replace fuses six times. While operating the tractor that day, he noticed heat coming from the rear of the tractor. He climbed out of the cab and saw that the tractor was on fire. The fire started behind the cab of the tractor. As the fire began, Tabor managed to unhitch his hay roller from the tractor and spare the roller from being consumed in the fire. The fire completely destroyed Tabor's tractor.

Tabor's tractor was insured by Plaintiff, Kentucky Farm Bureau Mutual Insurance Company (KFB). Before KFB paid Tabor's claim for the total loss of his tractor, KFB employed nationally-certified fire investigator Eric Evans to examine the fire damage to the tractor. Evans spoke with Tabor about the fire and examined the tractor. Evans concluded that the fire originated "behind the operator's seat at the right rear of the tractor." (Evans Report, p.8.) The only heat source in that location "was the electrical circuitry associated with the fuse/relay box." Id. Evans located no other heat source. Evans found that the initial fuel was "electrical wiring insulation and plastics associated with the fuse/relay box." Id. While Evans concluded that the fire began in the fuse box of the tractor, he opined that "[t]he degree of fire damage prevented a definite malfunction from being determined." Id. The fire

was classified as "accidental," meaning that "the proven cause does not involve an intentional human act to ignite or spread into an area where the fire should not be." (Evans Report, p. 9). Evans and KFB acknowledge that Evans can locate where the fire began, but cannot determine why the fire began.

Deere submits that Evans's testimony does not establish a defect in the tractor. Deere requests summary judgment in its favor.

## II.  Standard of Law

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(emphasis

added).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

## III. Discussion

KFB has alleged product liability claims against Deere.  To prevail on its claims, KFB must provide evidence that the tractor "failed to perform as intended, either because of the [defendant]'s negligence or because of an unreasonably dangerous condition."  Thomas v. Manchester Tank & Equipment Corp., 2005 WL 3673118, *1 (W.D. Ky. 2005).  It is the burden of the Plaintiff to establish the defect.  Id.  Circumstantial evidence may demonstrate the defect if the evidence is "sufficient to tilt the balance from possibility to probability" that the tractor was defective.  Morales v. American Honda Motor Co., Inc., 151 F.3d 500, 507 (6th Cir. 1998).  Evidence that induces mere "surmise or speculation" does not establish a defect.  See Highway Transport Co. v. Daniel Baker Co., 398 S.W.2d 501, 502 (Ky. 1966).

KFB alleges that the defect is clear.  According to KFB, after nearly a year of consistent problems with the software and electrical systems, including multiple blown fuses, the fuse box burned and the fire destroyed the tractor.  Evans's report confirms this conclusion, stating that the fire began in the fuse box and was initially fueled by wiring insulation.  Deere requests summary judgment on the basis that Evans and KFB cannot isolate a specific defect, and therefore cannot meet the burden of proof.  Deere submits that KFB's case is too circumstantial and requires a stacking of inferences, which Kentucky law does not allow.

Deere acknowledges that a defect may be proven by circumstantial evidence; however, it argues that it is "often difficult to draw the line between a reasonable inference and speculation." See Arlie Larimer & Sons, Inc., v. Kleen-Leen, Inc., 523 F.2d 865. 869 (6th Cir. 1975). "Although the jury may draw reasonable inferences from the evidence of a defect in manufacturing, it is incumbent on the plaintiff to introduce evidence that will support a reasonable inference that the defect was the 'probable' cause of the accident as distinguished from a 'possible' cause among other possibilities; otherwise, the jury verdict is based upon speculation or surmise." Midwestern V.W. Corp. v. Ringley, 503 S.W.2d 745, 747 (Ky. 1973). Even when an inference may be fairly drawn, inference-stacking may not be the basis establishing defect or causation. Briner v. General Motors Corp., 461 S.W.2d 99, 102 (Ky. 1970). This Court must therefore determine whether it would be reasonable for a jury to infer a defect under the circumstances of this case.

Deere submits that this case is similar to that of Briner, 461 S.W.2d 99. In Briner, the plaintiff alleged that a mechanical defect in her car caused her steering mechanism to lock, causing an accident while she was driving. Id. at 101. The Briner plaintiff argued that the car's repair history was evidence of the alleged defect. Briner, 461 S.W.2d at 101. Aside from the repair history, there was scant evidence of any mechanical problem. The repair history reflected that the car had a steering problem three months after purchase, and the problem was repaired. Id. at 100. Eight months later, the plaintiff reported problems of vibration and lack of speed. Id. The tire pressure was adjusted and the air conditioning compressor were then replaced. Id. The plaintiff later complained of a steering problem, but

5

dealership employees found no problem. Id. Another seven months passed before the accident, in which the plaintiff said that the car veered to the left and the steering was locked. Id.

The temporal aspects of Briner largely distinguish it from the case at bar. The Briner plaintiff's accident occurred nearly two years after she purchased her car, and after she had put 25,527 miles on the car. Briner, 461 S.W.2d at 100. The Briner plaintiff's most recent visit to the dealership occurred seven months before the accident, and mechanics were unable to locate any problems at that time.

In contrast, Tabor purchased his tractor in late 2004, and the service record reflects numerous service trips to the dealership beginning in May, 2005. On each of Tabor's trips to the dealership, a problem was acknowledged. Hartland responded to the problems by installing additional ground wires, replacing the BCU, replacing the reverse lever, checking circuit connections, replacing the enable solenoid, replacing the enable pressure switch, and installing a pressure sensor. At no point were the problems with the tractor solved. The record reflects that Hartland continued to seek a resolution for Tabor's problem through October, 2005. At that time, the suspected problem was a software problem, but a software patch to correct the problem was unavailable. When Tabor's tractor last left Hartland, the tractor contained a known problem, but the problem was not corrected and could not be fixed. The tractor, with only 400 hours of use, burned on November 7.

These facts all contrast with those of Briner. In Briner, the plaintiff had not visited the dealership with any complaints regarding her car for seven months prior to the accident.

Here, the seven months prior to November 7, 2005 were replete with complaints and attempted repairs to the tractor. In Briner, the dealership was unable to locate any problem with the car; here, a problem was known to exist with the tractor, but the problem was not corrected. In Briner, there were multiple possibilities other than a mechanical defect attributable to the defendant that could have caused the accident, such as "striking an object on the highway (plaintiff testified there was something dragging underneath her car), a failure of power in the steering system, a malfunction of the brakes, the breaking of a tie rod, or the deflation of the left front tire." Briner, 461 S.W.2d at 102, FN1. Here, Evans determined that the fire began in the fuse box and concluded that this was "probable," not merely "possible." (Evans Afft.) Evans's report eliminated multiple potential causes of the fire, and concluded that the proven cause did "not involve an intentional human act to ignite or spread into an area where the fire should not be." (Evans Report, p. 9).

While the Briner court found that a decision in favor of the plaintiff would require the unallowable stacking of inferences, the same does not apply here. Given a relatively new tractor with a notable history of problems including electrical and software problems, coupled with a fire originating in the fuse box, a jury could reasonably infer that the tractor was defective. The Court sees one inference only, rather than multiple, stacking inferences.

While Deere urges the Court to compare this case to Briner, the case of Perkins v. Trailco Mfg. and Sales Co., 613 S.W.2d 855 (1981), is more instructive. In Perkins, the plaintiff purchased a dump truck. Id. at 856. On the date of purchase, the plaintiff tested the hydraulic hoists, and no problem was noticed. Id. The plaintiff first used the truck about two

7

weeks later. Id. While properly operating the truck and dumping the truck's load, the hydraulics made a popping noise, and the trailer and load crashed to the ground. Id. at 857.

The case went to trial, but the trial judge removed the case from the jury because the plaintiff was unable to identify the specific defect that caused the truck to tip. Id. at 857. The Kentucky Supreme Court, however, reversed the decision, finding that "[t]he trial judge used the wrong criterion. The proper inquiry is whether it would be unreasonable under the facts for a jury to find that the defects complained of were a substantial factor in the cause of the accident." Id.

The Court found that "the evidence, although circumstantial, [was] of such quality that it might reasonably be inferred that the accident was caused by a defect in the trailer." Perkins, 613 S.W.2d at 858. The evidence was sufficient "to require the issue to be submitted to a jury." Id. The temporal issues of Perkins are different from the case at bar, but the similarities prevail. In Perkins, the failure of the truck was seen during its first usage. Here, Tabor first returned his tractor to the dealership a few months after the purchase, in the spring following the purchase of the tractor. After Tabor's first reports of problems, there is no evidence that they subsided. Then, while using his tractor as Tabor had been advised, the tractor caught fire.

In Perkins, the Court reasoned that '[t]here was an absence of direct proof of a specific defect," but the plaintiff did "negate other possible causes for the failure of the trailer to function properly." Perkins, 613 S.W.2d at 858. The Perkins plaintiff could not state with particularity what caused his dump trailer to fail, but he had eliminated causes of the failure

other than defect. Such is the case here. While KFB cannot isolate the exact defect that caused the tractor to burn, the fire investigator eliminated potential causes of the fire other than a problem in the fuse box. Because the fuse box has been isolated as the ignition site of the fire, there is sufficient circumstantial evidence of a defect in the tractor for this case to proceed. In this case, the alleged defect in the tractor is not simply a single possible cause, for the fire inspector eliminated other possible, external causes for the fire when examining the fire scene. The Plaintiff has introduced sufficient evidence to allow a jury to infer that a defect was a "probable" cause of the accident, rather than merely a "possible cause." See Midwestern V.W. Corp. v. Ringley, 503 S.W.2d 745, 747 (Ky. 1973).

## IV. Expert Disclosures

At hearing, Deere requested that if the case were to proceed, the expert testimony of Evans must be supplemented. The Court finds no need for KFB to produce additional testimony from Evans. Evans's testimony establishes that the fire originated in the fuse box, and that the fuse box was the heat source. The limited testimony of Evans has not changed, and therefore no reason for supplementation is known.

## IV. Conclusion

For the reasons explained above, it is hereby ordered that Defendant Deere's Motion for Summary Judgment is DENIED [DN 22].

cc: counsel of record